In the

# United States Court of Appeals

*for the*

# Tenth Circuit

COMPAÑÍA DE INVERSIONES MERCANTILES, S.A.,

*Petitioner-Appellee,*

– v. –

GRUPO CEMENTOS DE CHIHUAHUA S.A.B. DE C.V.
and GCC LATINOAMÉRICA, S.A. DE C.V.,

*Respondents-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO (DENVER), DOCKET NO. 1:15-CV-02120-JLK
(HONORABLE JOHN L. KANE, JUNIOR, SENIOR U.S. DISTRICT JUDGE)

## OPPOSITION TO PETITION FOR REHEARING

KATTEN MUCHIN
  ROSENMAN LLP

ELIOT LAUER
GABRIEL HERTZBERG
50 Rockefeller Plaza
New York, NY 10020
(212) 940-6690
eliot.lauer@katten.com

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP

JUAN O. PERLA
SYLVI SAREVA
101 Park Avenue
New York, NY 10178
(212) 696-6000
jperla@curtis.com

*Attorneys for Petitioner-Appellee*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND ................................................................3

ARGUMENT ......................................................................................8

I.     There Is No Circuit Split on the Standard for Deciding a Rule 60(b)(5) Motion to Vacate a Judgment Confirming an Arbitral Award.......................8

      A.    The Majority Adopted the Same Standard as the Second Circuit in *Thai-Lao* Consistent with Rule 60(b) Jurisprudence .......................8

      B.    The Majority's Determination that Finality Is a Fundamental Principle of U.S. Public Policy Is Consistent with Long-standing Precedent..............................................................10

II.    The Majority's Comity Analysis Is Consistent with Existing Case Law Regarding Recognition of Foreign Annulment Decisions ...................13

III.   This Private Dispute Does Not Present an Issue of Public Importance ........15

CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Baker v. GMC,*
  522 U.S. 222 (1998) ..........................................................................14

*Comm'r v. Sunnen,*
  333 U.S. 591 (1948) ..........................................................................15

*Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de
  Chihuahua S.A.B. de C.V.,*
  970 F.3d 1269 (10th Cir. 2020) ......................................................2, 5

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v.
  Pemex-Exploración y Producción,*
  832 F.3d 92 (2d Cir. 2016) ...............................................................13

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th
  56 (2d Cir. 2022) ...............................................................................14

*Federated Dep't Stores v. Moitie,*
  452 U.S. 394 (1981) ..................................................................... 11, 14

*Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.,*
  994 F.3d 1181 (10th Cir. 2021)..........................................................15

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH,*
  10 F.4th 1016 (10th Cir. 2021)...........................................................15

*Hilton v. Guyot,*
  159 U.S. 113 (1895) ..........................................................................13

*James B. Beam Distilling Co. v. Georgia,*
  501 U.S. 529 (1991) ..........................................................................11

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
  731 F.2d 909 (D.C. Cir. 1984) ...........................................................13

*MacArthur v. San Juan Cnty.,*
  497 F.3d 1057 (10th Cir. 2007)...........................................................15

*Nelson v. City of Albuquerque,*
   921 F.3d 925 (10th Cir. 2019) ...............................................................11

*Plotner v. AT&T Corp.,*
   224 F.3d 1161 (10th Cir. 2000) ...........................................................11

*Sanchez-Llamas v. Oregon,*
   548 U.S. 331 (2006) ................................................................................10

*St. Louis Baptist Temple v. FDIC,*
   605 F.2d 1169 (10th Cir. 1979) ...........................................................14

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic,*
   864 F.3d 172 (2d Cir. 2017) .........................................................passim

**Statutes**

28 U.S.C. § 1291 .........................................................................................11

**Rules**

Federal Rule of Civil Procedure 60(b)(5) ..........................................passim

**Other Authorities**

2 A.C. Freeman, A Treatise of the Law of Judgments
   § 627 (5th ed. 1925) ................................................................................11

Restatement (Second) of Conflict of Laws § 98 cmt. b .........................15

## <u>INTRODUCTION</u>

This appeal arose from a decision by the U.S. District Court for the District of Colorado (J. Kane) denying a motion to vacate its judgment under Federal Rule of Civil Procedure 60(b)(5), which applies when the judgment is based on an earlier judgment that has been reversed or vacated. Consistent with the reasoning of the only other circuit court decision applying Rule 60(b)(5) in the context of a judgment confirming an arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172 (2d Cir. 2017), the majority of the panel affirmed the denial of vacatur, holding that the district court had not abused its discretion in favoring the strong interests in finality and equity over extending comity to a Bolivian court order annulling the underlying award.

The majority emphasized the fact that Appellants Grupo Cementos de Chihuahua S.A.B. de C.V. and GCC Latinoamérica, S.A. de C.V. (together, "GCC") waited until *after* the district court entered the judgment confirming the award in May 2019 (the "Confirmation Judgment") to pursue a new remedy in Bolivia that led to the subsequent annulment of the award, and did so by re-litigating an issue that had previously been adjudicated in a final judgment of Bolivia's highest court. Nothing prevented GCC from pursuing that remedy as

early as January 2017, two years before the Confirmation Judgment. And at no point did GCC apprise the district court or this Court (while the Confirmation Judgment was on appeal) of the possibility of pursuing that additional remedy or of the fact that GCC had filed that new application. The majority agreed that enforcing the Bolivian court order for purposes of vacating the Confirmation Judgment would not only offend basic U.S. public policy favoring the finality of judgments and disfavoring piecemeal litigation, but also unjustly reward GCC for gaming its rights in Bolivia among other inequitable conduct.

None of the cases that GCC relies on in the Statement of Counsel involve the application of Rule 60(b)(5). Nor does that statement mention the only other case in which Rule 60(b)(5) has been applied in this context, *Thai-Lao*. The reason is simple: the majority decision does not depart from well-established precedent applying Rule 60(b)(5) in this or any other context.

The dissent and GCC approach this appeal as though the question before the panel was the district court's decision to confirm the underlying award in the first instance. But that question was already answered by the district court in the Confirmation Judgment. A unanimous panel of this Court affirmed that judgment, *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020) ("*CIMSA*"), and the Supreme Court denied *certiorari*. Rather, the question before the district court and the panel in this

appeal was whether all of those proceedings and the resulting U.S. judgment should be undone based on GCC's deliberate decision to wait until after the Confirmation Judgment to bring a new challenge to the award in Bolivia based on old arguments that had already been disposed of in a final order by Bolivia's highest court. The majority did not depart from any precedent in affirming the district court's conclusion that, in these circumstances, GCC had not shown that it was entitled to the equitable relief of vacatur. Rehearing is therefore unwarranted.

## FACTUAL BACKGROUND

1.     In November 2011, CIMSA initiated arbitral proceedings in Bolivia pursuant to the terms of its shareholder agreement with GCC. In September 2013, the tribunal issued an initial decision ruling that GCC had breached CIMSA's right of first refusal under the shareholder agreement (the "Merits Award"). Op. 5.

In November 2013, despite the parties' agreement to "expressly waive[] all actions for annulment, objection, or appeal against the award," Op. 4, GCC filed an application to annul the Merits Award in Bolivia. Following protracted litigation, the highest Bolivian court (the "PCT") issued a decision that "reinstated the [M]erits [A]ward as a final and binding judgment." Op. 9.

In April 2015, the arbitral tribunal awarded CIMSA approximately $36 million in damages and costs, plus interest (the "Damages Award" and together with the Merits Award, the "Final Award"). Op. 5. In July 2015 – once again

ignoring its contractual obligation not to seek annulment of the award – GCC filed an application to set aside the Damages Award in Bolivia. GCC's application was assigned to the Twelfth Civil and Commercial Court of La Paz (the "Twelfth Judge"). Op. 9. In October 2015, the Twelfth Judge issued a decision setting aside the Damages Award. *Id.*

Shortly thereafter, CIMSA applied for a constitutional remedy (called an "*amparo*") against the arbitral tribunal on the ground that it had failed to enforce the parties' contractual waiver of any right to challenge the award (the "Arbitral Amparo"). Op. 9-10. The court that decides *amparos* in the first instance (known as a "Guarantee Court") dismissed the Arbitral Amparo on procedural grounds. Op. 10. While the Arbitral Amparo was pending, in April 2016, CIMSA filed a second *amparo*, seeking recourse directly against the Twelfth Judge's decision (the "Substantive Amparo"). *Id.* The Guarantee Court denied the Substantive Amparo. *Id.*

In November 2016, a panel of three judges (called a "chamber") from the PCT affirmed the dismissal of the Arbitral Amparo (the "First PCT Order"). Like the Guarantee Court, the PCT declined to reach the merits, holding that since the Twelfth Judge had issued a decision annulling the Damages Award and was not a party to the Arbitral Amparo, CIMSA had to seek relief against the Twelfth Judge directly. Op. 10-11.

In December 2016, a separate chamber of the PCT issued a judgment reinstating the Damages Award (the "2016 PCT Judgment"). The PCT rejected GCC's argument that CIMSA had improperly filed the Substantive Amparo while the Arbitral Amparo was pending, holding there was no risk of inconsistency between the two *amparos*. The PCT also rejected the two grounds upon which the Twelfth Judge had set aside the Damages Award, and ordered the Twelfth Judge to issue a new decision consistent with its decision. Op. 11.

In January 2017, upon another application by GCC, the PCT issued a procedural order confirming there was no risk of conflicting decisions by the PCT in the two *amparo* because they "involved distinct parties, subject matters, and causes of action." Op. 12 (quoting A.809, Vol.4). Under Bolivian law, final PCT decisions are not subject to further review or other recourse. A.769, Vol.4; *see CIMSA*, 970 F.3d at 1298.

2.      In March 2019, the district court granted CIMSA's petition to confirm the Final Award, and entered the Confirmation Judgment the following day. Op. 14; A.648-49. GCC appealed that decision.

In May 2019, GCC filed a new application in Bolivia. GCC asked the Guarantee Court in the Arbitral Amparo to enforce the First PCT Order dismissing the Arbitral Amparo, and to dismiss the Substantive Amparo. The Guarantee Court rejected that application. Op. 15.

GCC then filed a second application (known as a "complaint for non-compliance" or "*queja*") with the Guarantee Court in the Arbitral Amparo. GCC argued that the Substantive Amparo was invalid because CIMSA filed it in "breach" of the Arbitral Amparo. The Guarantee Court rejected that application. Op. 15. GCC took its *queja* to the PCT, arguing yet again that CIMSA should not have been permitted to file the Substantive Amparo while the Arbitral Amparo was pending. Op. 16.

GCC never mentioned any of these new applications to the district court or the Tenth Circuit before or while those new proceedings were pending. In August 2020, this Court affirmed the Confirmation Judgment, and issued its mandate on October 8, 2020.

In a decision served on CIMSA on October 29, 2020, a panel of the PCT issued an order invalidating the final 2016 PCT Judgment. On November 5, 2020, upon an *ex parte* motion by GCC, the Twelfth Judge issued an order, in which she reinstated her original decision setting aside the Damages Award. Op. 17.

3. On November 20, 2020, relying on these new Bolivian orders, GCC filed a motion in the district court to vacate the Confirmation Judgment under Rule 60(b)(5). CIMSA opposed GCC's motion on the grounds that the new Bolivian orders were repugnant to basic notions of U.S. justice because they violated the fundamental principle of *res judicata*. CIMSA further opposed GCC's motion on

the grounds that, under Rule 60(b)(5), finality and equity outweighed any interest in extending comity to the Bolivian annulment decision in light of GCC's gamesmanship and other inequitable conduct. A.890-95; 906-08, Vol.4.

On April 30, 2021, the district court denied GCC's motion to vacate, reasoning that "parties cannot be permitted to prolong foreign proceedings indefinitely," particularly where, as here, "a foreign high court had already issued final decisions in two nullification proceedings in favor of the judgment creditor when [the district court] confirmed the arbitral awards." A.1212-13, Vol.5.[1] GCC appealed that decision.

4. In a majority opinion authored by Judge Matheson, and joined by Chief Judge Holmes, this Court affirmed the denial of vacatur, emphasizing the procedural posture of Rule 60(b)(5) and adopting the same standard as the Second Circuit in *Thai-Lao*. The majority took particular note of the timing of GCC's *queja*, emphasizing that the new Bolivian orders "were based on a challenge that

---

[1] As the district court and the majority recognized, GCC has dragged these proceedings out for almost ten years, persistently attempting to resist enforcement of the award since 2013 and the U.S. judgment since 2019, including by (1) seeking annulment of the Merits and Damages Awards notwithstanding the parties contractual agreement to waive post-award annulment actions; (2) obtaining an injunction in Mexico in between the proceedings on the Merits and Damages Awards; (3) unnecessarily delaying service of process in the United States; (4) filing new applications, including the *queja*, after the Confirmation Judgment; and (5) obtaining a second injunction in Mexico following the district court's order enforcing the Confirmation Judgment. *See* Op. 60-65; 82-83; A.1217-1219, Vol.5.

GCC initiated *after* the district court confirmed the Damages Award" and on

arguments that "the PCT had previously rejected[.]" Op. 61. Based on the facts of

this case, the majority concluded that the district court had not abused its discretion

in refusing to vacate the Confirmation Judgment.

Judge Rossman dissented, taking issue with the district court's refusal to

enforce the Bolivian annulment decision, given the district court's determination

that the Bolivian orders were not themselves repugnant. Dissent 29-30.

## ARGUMENT

I.  **There Is No Circuit Split on the Standard for Deciding a Rule 60(b)(5) Motion to Vacate a Judgment Confirming an Arbitral Award**

A.  The Majority Adopted the Same Standard as the Second Circuit in *Thai-Lao* Consistent with Rule 60(b) Jurisprudence

The majority's decision is consistent with the analysis of the only other

circuit to have confronted the question presented here: whether to recognize a

foreign decision purporting to annul an arbitral award in the context of a motion to

vacate a U.S. judgment confirming that award. In *Thai-Lao*, the Second Circuit

held that, under Rule 60(b), courts "must not simply treat the [foreign] annulment

as dispositive[.]" 864 F.3d at 186. Rather, comity under the New York Convention

is "only one of the considerations to be taken into account in deciding a Rule

60(b)(5) motion," and courts "should analyze the full range of Rule 60(b)

considerations, including the weighty interests served by protecting the finality of

judgments of our courts." *Id*. at 186-87. And because vacatur is an equitable remedy, the other significant interest to be weighed is "[w]hether the movant acted equitably[.]" *Id.* at 186.

That is the standard affirmed by the majority here. The majority expressly agreed with the Second Circuit that, when deciding whether to vacate a judgment confirming an award, courts should weigh comity against the full range of Rule 60(b) interests, including the weighty interests served by protecting the finality of U.S. judgments. Op. at 22-23, 26, 30-33, 46, 55.[2] As to that legal framework, there is no circuit split.

GCC's petition ignores the "different procedural posture" of Rule 60(b) and focuses instead on cases in which a court was called upon to refuse confirmation under Article V(1)(e) of the New York Convention in the first instance. *See* Op. 51 n.30. Contrary to GCC's suggestion, however, the district court and the majority did not depart from general comity principles, but simply followed the same standard as the Second Circuit for deciding whether to vacate a U.S. judgment on the basis of a subsequent foreign annulment decision—an analysis that "require[s] recognition and consideration of the interests protected by Rule 60(b)." *Thai-Lao*, 864 F.3d at 187.

---

[2] A reviewing court may only reverse a lower court's ruling on a 60(b) motion if it finds "a complete absence of a reasonable basis" and "is certain that the decision is wrong." Op. 19 (citation omitted).

While the dissent acknowledges that the district court has discretion under Rule 60(b)(5), the dissent would hold that, when dealing with an award under the New York Convention, the comity analysis should be controlling. Dissent 36-39. In other words, if the award would not be confirmed in the first instance based on the foreign annulment decision, a U.S. court cannot as a matter of law refuse to vacate its own judgment under Rule 60(b)(5). In effect, it is the dissent's rule that would create a circuit split by departing from the Second Circuit's holding in *Thai-Lao* that comity is not dispositive under Rule 60(b)(5) and that U.S. courts should take stock of other weighty interests, including finality.

In brief, the majority's decision to affirm the denial of vacatur based on the facts of this case is in line with general Rule 60(b)(5) jurisprudence and the Second Circuit's application of that rule to judgments confirming arbitral awards.

B.    <u>The Majority's Determination that Finality Is a Fundamental Principle of U.S. Public Policy Is Consistent with Long-standing Precedent</u>

The majority's assessment of finality as a sufficiently weighty interest is well rooted in the fundamental tenets of U.S. law and public policy. As the majority explained, the Supreme Court has acknowledged "the law's important interest in the finality of judgments," *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356 (2006) (quotations omitted), and that "[p]ublic policy dictates that there be an end of litigation," *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 542

(1991) (quotations omitted). *See also Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).

Indeed, the doctrine of *res judicata*, the primary purpose of which is to preserve the finality of judgments and proceedings, is a "principle of universal jurisprudence forming part of the legal systems of all civilized nations." 2 A.C. FREEMAN, A TREATISE OF THE LAW OF JUDGMENTS § 627 (5th ed. 1925). As the Supreme Court has observed:

> [P]ublic policy dictates... that matters once tried shall be considered forever settled as between the parties.... [T]he doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. *It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts*.

*Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401 (1981) (internal citations and quotation marks omitted) (second emphasis added); *see also Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000). Moreover, as the majority noted, this policy "aligns with the finality principle embodied in 28 U.S.C. § 1291 to avoid piecemeal litigation." Op. 50 n.29.

Rule 60(b) amplifies this finality interest "by providing only limited grounds for vacatur," meaning that judgments should be vacated only in exceptional circumstances. Op. 49. Again, in *Thai-Lao*, the Second Circuit "recognized the interest in 'preserving the finality of judgments,'" including judgments confirming

awards under the New York Convention. Op. 55. Thus, contrary to the dissent's suggestion, the district court did not create a "new legal rule" or a broader test overemphasizing the principle of finality, Dissent 8, but rather adhered to this basic principle of U.S. law and justice.

In observing that "'[r]epugnant' is a fitting description of proceedings without end," A.1216, Vol.5, the district court was referring not only to the U.S. proceedings, but also the Bolivian proceedings. In fact, the district court and the majority relied on the timing of GCC's *queja* application in relation to the U.S. proceedings—a critical fact that distinguishes this case from *Thai-Lao*. As the majority points out, the dissent mistakenly conflates the proceedings before the Twelfth Judge pursuant to the 2016 PCT Judgment, which were pending when the district court entered the Confirmation Judgment, and GCC's *queja*, which "was not pending when the district court entered the Confirmation Judgment." Op. 32 n.13. Nothing prevented GCC from filing its *queja* sooner, and its justification for not doing so "rings hollow." Op. 62. Furthermore, "[n]ot only did GCC wait to pursue its *queja*, but the PCT had previously rejected the arguments presented in that *queja*." Op. 61. To recognize the Bolivian annulment decision in those circumstances would encourage endless, piecemeal litigation in both Bolivia and the United States by condoning GCC's deliberate efforts to undermine the Final

Award and the Confirmation Judgment through "an endless barrage of challenges" rehashing old issues in the Bolivian courts. Op. 47 (quoting A.1216, Vol.5).

Overall, this case presents a very distinct set of facts that justifies weighing finality (and equity) more heavily than comity, applying the same standard but resulting in a different outcome than the Second Circuit in *Thai-Lao*.

## II.  The Majority's Comity Analysis Is Consistent with Existing Case Law Regarding Recognition of Foreign Annulment Decisions

The majority's analysis is consistent with basic notions of comity, which is not "a matter of absolute obligation[.]" *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895); *see also Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937-38 (D.C. Cir. 1984). Contrary to GCC's argument that the majority "breaks from . . . uniform precedent" (Pet. 8), the majority followed the settled principle that "a final judgment obtained through sound procedures in a foreign country is generally conclusive . . . *unless* . . . enforcement of the judgment would offend the public policy of the state in which enforcement is sought." *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016); *see* Op. 25.

The dissent and GCC believe that the majority deviated from the standard comity analysis because it affirmed the district court's refusal to enforce the foreign annulment decision even though it had determined the decision itself was not repugnant. In other words, the dissent would hold that the propriety of the

foreign annulment decision *itself* is the only relevant inquiry. However, as the

majority makes clear, that narrow approach to comity would put the Tenth Circuit

out of step with other circuits that have considered this same issue. Indeed, the

Second Circuit has repeatedly focused on whether "giving effect" or

"implementing" the foreign annulment decision would violate U.S. public policy.

*See Pemex*, 832 F.3d at 108-09; *Thai-Lao*, 864 F.3d at 186. The Second Circuit's

decision in *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40

F.4th 56 (2d Cir. 2022), never questioned, let alone overruled, the Second Circuit's

reasoning in *Pemex* and *Thai-Lao*. The majority also correctly explained that "just

because the D.C. Circuit limited its analysis to whether a foreign annulment order

was repugnant to public policy does not foreclose consideration of whether

enforcement would violate public policy." Op. 43.

    In any case, CIMSA argued and maintains that the Bolivian annulment

decision itself is repugnant to basic notions of U.S. justice, because it offends the

fundamental principle of *res judicata*, which provides that a "final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that

were or could have been raised in that action." *Federated*, 452 U.S. at 398; *see also*

*Baker v. GMC*, 522 U.S. 222, 233 n.5 (1998). This doctrine is based in part on

clear "public policy favoring the establishment of certainty in legal relations." *St.*

*Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1175 (10th Cir. 1979) (quoting

*Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). The PCT's new decision on an issue it had already decided in the same dispute between the same parties offends that universal principle, and provides an independent reason to conclude both that the judgment itself is repugnant, and that enforcing it would be repugnant.[3]

In sum, there is no circuit split as to the majority's conclusion that "enforcement" of the Bolivian annulment decision, regardless of its validity as a matter of Bolivian law, would offend basic notions of U.S. justice.

## III. This Private Dispute Does Not Present an Issue of Public Importance

GCC's concern that the majority decision will invite "forum shopping" is entirely without merit. As set forth above, the majority opinion does not create a circuit split and so creates no risk of forum shopping.

---

[3] GCC also claims that the majority's decision conflicts with *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016 (10th Cir. 2021), because "a sister state judgment could not be denied recognition" under the Full Faith and Credit Clause of the U.S. Constitution. (Pet. 9). But *Hetronic* is not a Rule 60(b) case or a New York Convention case, so the *Hetronic* court did not have occasion to consider the standard for refusing to recognize a foreign annulment decision, let alone for doing so under Rule 60(b)(5). Moreover, as the Tenth Circuit has held, "[i]n contrast to the full faith and credit rule, the comity doctrine allows the receiving court greater discretion to determine whether to enforce the foreign judgment." *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1067 (10th Cir. 2007); *see* Restatement (Second) of Conflict of Laws § 98 cmt. b ("[j]udgments rendered in a foreign nation are not entitled to the protection of full faith and credit"). Nor does the majority's decision conflict with this Court's decision in *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1189 (10th Cir. 2021), which stands for the basic proposition that a court in the seat of the arbitration has the authority to set aside an award in accordance with its domestic law.

The concern that award creditors will rush to the Tenth Circuit to obtain judgments before foreign courts act is misplaced. The New York Convention contains a provision (Article VI) allowing parties to obtain a stay of enforcement while annulment proceedings are pending at the seat if the requesting party posts security; GCC chose to forego that option. Furthermore, contrary to the dissent's assertion that "everyone knew set-aside proceedings were pending in Bolivia," Dissent 15 n.8, GG did not commence the proceedings that resulted in the annulment order until after the district court had confirmed the award—a significant fact that future litigants can avoid by pursuing annulment remedies diligently.

Overall, this case presents a very unique set of facts between private parties and no public interest is advanced by prolonging these proceedings any longer.

## CONCLUSION

GCC's petition for rehearing should be denied.

Dated: February 6, 2023

KATTEN MUCHIN
  ROSENMAN LLP

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP

By:   */s/ Juan O. Perla*

Eliot Lauer
Gabriel Hertzberg
50 Rockefeller Plaza
New York, NY 10020
(212) 940-6690
eliot.lauer@katten.com

Juan O. Perla
Sylvi Sareva
101 Park Avenue
New York, NY 10178
(212) 696-6000
jperla@curtis.com
ssareva@curtis.com

*Attorneys for Petitioner-Appellee*

## <u>CERTIFICATE OF COMPLIANCE WITH RULES 32 and 35</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this document complies as follows:

1.     This brief complies with the type-volume limitation of Rule 35 of the Federal Rules of Appellate Procedure because this brief contains 3,864 words, excluding the parts of the brief exempt by FRAP 32(f).

2.     The document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: February 6, 2023

*/s/ Juan Perla*
Juan O. Perla

## CERTIFICATE OF COMPLIANCE WITH RULE 25.5

Pursuant to Tenth Circuit Rule 25.5, the undersigned counsel certifies that there are no required privacy redactions.

Dated: February 6, 2023

/s/ Juan Perla
Juan O. Perla

## CERTIFICATE REGARDING VIRUS SCANNING

The undersigned counsel certifies that the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

Dated: February 6, 2023

/s/ Juan Perla
Juan O. Perla

## **CERTIFICATE REGARDING PAPER COPIES**

Pursuant to Tenth Circuit Rule 27.2, the undersigned counsel certifies that there are no paper copies required for this brief.


Dated: February 6, 2023

*/s/ Juan Perla*
Juan O. Perla

## CERTIFICATE OF SERVICE

I hereby certify that, on February 6, 2023, I caused the foregoing brief to be served on counsel for all parties via CM/ECF.

Dated: February 6, 2023

/s/ *Juan Perla*
Juan O. Perla