**Nos. 21-1196, 21-1324**

In The

# United States Court of Appeals

For The Tenth Circuit

▸▸◂◂

COMPAÑÍA DE INVERSIONES MERCANTILES, S.A.,

*Petitioner-Appellee*,

v.

GRUPO CEMENTOS DE CHIHUAHUA S.A.B. DE C.V.,
and GCC LATINOAMÉRICA, S.A. DE C.V.,

*Respondents-Appellants.*

▸▸◂◂

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO (DENVER), DOCKET NO. 1:15-CV-02120-JLK
(HONORABLE JOHN L. KANE, JUNIOR, SENIOR U.S. DISTRICT JUDGE)

## RESPONDENTS-APPELLANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO RECALL ISSUANCE OF THE MANDATE

Juan P. Morillo
Derek L. Shaffer
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000
juanmorillo@quinnemanuel.com

David M. Cooper
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
davidcooper@quinnemanuel.com

*Counsel for Appellants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 3

I.    THERE IS A SUBSTANTIAL POSSIBILITY THAT GCC'S
      PETITION FOR A WRIT OF CERTIORARI WILL BE GRANTED .......... 4

      A.    This Court's New Legal Standard Conflicts With Other Circuits'
            Precedents On Deference To Foreign Court Decisions Vacating
            Foreign Arbitration Awards .................................................. 4

      B.    This Case Presents A Strong Vehicle For Reviewing The
            Deference Owed To Foreign Court Decisions Vacating Foreign
            Arbitration Awards .............................................................. 9

      C.    The Deference Owed To Foreign Court Decisions Vacating
            Foreign Arbitration Awards Is An Important And Recurring
            Issue .................................................................................. 10

II.   GOOD CAUSE FOR A STAY EXISTS BECAUSE A STAY WILL
      AVOID POTENTIALLY NEEDLESS ENFORCEMENT WITHOUT
      CAUSING ANY HARM TO CIMSA ........................................... 12

III.  IN THE ALTERNATIVE, THIS COURT SHOULD RECALL THE
      MANDATE IF THE MANDATE ISSUES BEFORE THIS COURT
      DECIDES THIS MOTION ......................................................... 15

CONCLUSION ...................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Cases

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*,
 191 F.3d 194 (2d Cir. 1999) .............................................................................. 11

*Burris v. Parke*,
 130 F.3d 782 (7th Cir. 1997) ............................................................................. 15

*Calderon v. Thompson*,
 523 U.S. 538 (1998) ........................................................................................... 15

*California Med. Ass'n v. Shalala*,
 207 F.3d 575 (9th Cir. 2000) ............................................................................... 9

*In re Chromalloy Aeroservices*,
 939 F. Supp. 907 (D.D.C. 1996) ......................................................................... 8

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de
  Chihuahua S.A.B. de C.V.*,
 970 F.3d 1269 (10th Cir. 2020) ......................................................................... 12

*Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de
  Chihuahua, S.A.B. de C.V.*,
 58 F.4th 429 (10th Cir. 2023) ............................................ 1, 4, 5, 6, 7, 9, 10, 11

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v.
  Pemex-Exploración y Producción*,
 832 F.3d 92 (2d Cir. 2016) ("*Pemex*") ....................................................... 6, 7, 8

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
 40 F.4th 56 (2d Cir. 2022) ................................................................................... 7

*Getma Int'l v. Republic of Guinea*,
 862 F.3d 45 (D.C. Cir. 2017) ............................................................................... 5

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
 10 F.4th 1016 (10th Cir. 2021) ........................................................................... 9

*N. Cal. Power Agency v. N.R.C.*,
 393 F.3d 223 (D.C. Cir. 2004) ........................................................................... 15

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
 487 F.3d 928 (D.C. Cir. 2007) .................................................................. 5, 8, 11

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
  864 F.3d 172 (2d Cir. 2017)............................................................ 2, 5, 7, 8, 9, 10

## **Rules and Regulations**

Fed. R. Civ. P. 60(b)(1) ............................................................................. 15

Fed. R. Civ. P. 60(b)(5) ...................................................... 1, 2, 3, 5, 9, 10

Fed. R. App. P. 41(b)................................................................................. 15

Fed. R. App. P. 41(d)(2)(A) ................................................................... 1, 3

10th Cir. R. 41.1(B)................................................................................. 1, 3

## **Other Authorities**

Restatement (Second) of Conflict of Laws § 117, cmt. c (1971) ............................. 6

Restatement (Fourth) of the Foreign Relations Law of the United States
  § 484(c) (2018) ................................................................................... 6

.

## **INTRODUCTION**

Pursuant to Rule 41(d)(2) of the Federal Rules of Appellate Procedure, Respondents-Appellants Grupo Cementos de Chihuahua, S.A.B. de C.V. and GCC Latinoamérica, S.A. de C.V. (together, "GCC") respectfully move this Court for an order staying issuance of the mandate in this appeal pending the timely filing and disposition of a petition for a writ of certiorari with the Supreme Court of the United States and, if the petition is granted, pending the Supreme Court's final disposition. This Court issued its opinion and judgment on January 10, 2023, *see Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, 58 F.4th 429 (10th Cir. 2023) ("Op."), and denied GCC's motion for panel or en banc rehearing on February 17.  The mandate is currently scheduled to issue on February 24, 2023.  Counsel for Petitioner-Appellee Compañía de Inversiones Mercantiles S.A. ("CIMSA") stated that CIMSA will oppose this motion.

GCC intends to petition for a writ of certiorari, which is due on or around May 18, 2023.  The petition will challenge this Court's affirmance of the district court's denial of Rule 60(b)(5) relief and continued enforcement of a Bolivian arbitral award that has been set aside by Bolivia's highest court and is undisputedly a nullity under Bolivian law.

There are good grounds for staying issuance of the mandate (or recalling the mandate if it issues before the Court resolves this motion).

First, there is a substantial possibility that the Supreme Court will grant GCC's forthcoming petition for certiorari. While this Court's opinion disclaims a conflict with other circuit opinions, GCC respectfully submits, as Judge Rossman explains in dissent, that there is such a conflict here. This Court's opinion, which affords broad discretion to deny comity to the Bolivian court's ruling based on a generic policy interest in finality, creates a direct circuit split with on-point precedents of the D.C. and Second Circuits, which hold that a foreign judgment vacating a foreign arbitration award governed by that country's own law must be respected unless it is repugnant to fundamental notions of justice. This case also presents an apt vehicle for Supreme Court review. When considering a materially identical Rule 60(b)(5) motion to set aside a judgment enforcing an arbitral award, the Second Circuit held that a district court must extend comity to a foreign annulment order unless the annulment order itself is "repugnant to fundamental notions of what is decent and just." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 184 (2d Cir. 2017) (quotation marks omitted). Finally, the circumstances when a U.S. court may enforce an arbitral award that has been set aside by the rendering forum's highest court is an important and increasingly recurring issue under the New York Convention.

Second, good cause exists for a stay because it will forestall unnecessary, burdensome remand proceedings in the district court. The district court has stayed

its order directing GCC to turn over property located in Mexico and approved a bond fully securing CIMSA's judgment. The bond states that CIMSA "shall not collect on [its judgment] during the pendency of [GCC's] appeal" of the Rule 60(b)(5) order. District Court ECF No. 271 (Addendum) at 1. GCC's appeal of the Rule 60(b)(5) order will still be pending until disposition of its forthcoming Supreme Court petition for certiorari. A stay would ensure that the bond's terms are respected, avoid unnecessary interim disputes, and spare GCC the harm that would result were it forced to bring assets into the United States from Mexico, before the Supreme Court can have its say. In contrast, there is no harm to CIMSA from a delay in issuance of the mandate for only a period of months until the Supreme Court determines whether to grant certiorari. By design, the bond fully secures CIMSA's judgment and spares it from any potential harm. There is no need for the mandate to issue before the appeal concludes upon disposition of GCC's forthcoming petition.

## **ARGUMENT**

A motion to stay the mandate pending the filing of a petition for a writ of certiorari should be granted if the movant "show[s] that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). This Court's rules similarly state: "A motion to stay the mandate in a civil case will not be granted unless the court finds there is a substantial possibility

that a petition for writ of certiorari would be granted."  10th Cir. R. 41.1(B).  Here, there is a substantial possibility that GCC's petition for certiorari will be granted and good cause for staying issuance of the mandate pending disposition of its certiorari petition and, if the petition is granted, pending the Supreme Court's final disposition.

## I.    THERE IS A SUBSTANTIAL POSSIBILITY THAT GCC'S PETITION FOR A WRIT OF CERTIORARI WILL BE GRANTED

A stay of issuance of the mandate is warranted because GCC's petition for a writ of certiorari will present a substantial question concerning the correct standard for determining when a U.S. court should extend comity to a foreign court order annulling an arbitral award.  This Court's decision creates a circuit split on this issue with the D.C. and Second Circuits; this case is an ideal vehicle to resolve this circuit split; and this issue is of profound and recurring importance.

### A.    This Court's New Legal Standard Conflicts With Other Circuits' Precedents On Deference To Foreign Court Decisions Vacating Foreign Arbitration Awards

There is a substantial possibility that the Supreme Court will grant review to address a split between circuits concerning the deference owed to a foreign judgment vacating a foreign arbitration award.

*First*, while the panel opinion cites (Op. 28-29) the D.C. Circuit for a public-policy gloss on the Convention, the D.C. Circuit has strictly limited that exception in ways that this Court has not.  "It takes much more than a mere assertion that the judgment of the primary State 'offends the public policy' of the secondary State to

4

overcome a defense raised under Article V(1)(e)."   *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007).   A "foreign judgment is unenforceable as against public policy ***to the extent that it*** [the judgment] ***is repugnant*** to fundamental notions of what is decent and just in the United States." *Id.* (emphasis added; quotation marks and citations omitted); *see Getma Int'l v. Republic of Guinea*, 862 F.3d 45, 48 (D.C. Cir. 2017) ("We will enforce an annulled award only if the ***annulment*** is 'repugnant to fundamental notions of what is decent and just' in the United States.   Getma has not satisfied that demanding burden.") (emphasis added; citations omitted).   In contrast, this Court has held (Op. 45) that "a court may refuse to enforce an annulment order if doing so would violate public policy."   This operative test departs from *TermoRio*'s holding that generic notions of public policy are insufficient, where the judgment itself is not repugnant.   And it is common ground in this case (Op. 40) that the foreign judgment at issue is not so repugnant.

*Second*, the Second Circuit has applied the same standard, specifically in the identical Rule 60(b)(5) posture, to ensure that "public policy" does not become a catch-all excuse to disregard for foreign judgments.   As the Second Circuit explained, "a foreign judgment is unenforceable as against public policy ***to the extent that it is repugnant*** to fundamental notions of what is decent and just in the United States."   *Thai-Lao*, 864 F.3d at 184 (quotation marks omitted; emphasis

added).  In contrast, the public-policy exception employed here extends to cases where the foreign judgment is not repugnant to fundamental notions of justice.

To be sure, the opinion in this case  (Op. 23-29) seeks to reconcile this conflict by reading into other circuits' cases an additional basis to disregard the foreign judgment if *enforcement* of the foreign judgment is repugnant.  But no other court has denied comity to a foreign judgment on this ground.  And the "repugnant" test comes from the Restatement, which states that the public-policy exception applies *only* where "where the original claim is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought."  Restatement (Second) of Conflict of Laws § 117, cmt. c (1971); *see* Restatement (Fourth) of the Foreign Relations Law of the United States § 484(c) (2018) (exception applies where "the judgment or the claim … is repugnant").  And that is the language the courts above used; none modified this language to analyze the equities of *enforcement*, quite apart from the original claim.  *See* Dissent 6.  Even CIMSA did not endorse the panel opinion's reading of D.C. and Second Circuit precedents in the district court.  *See* Dissent 26 n.17.

Although this Court (Op. 33) noted certain quotes discussing how "giving effect" to the foreign judgments would violate public policy, the animating concern in those instances was that the foreign judgment itself was illegitimate.  *See Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-*

*Exploración y Producción*, 832 F.3d 92, 111 (2d Cir. 2016) ("*Pemex*") ("[T]he nullification of the award [*i.e.*, the Mexican annulment order] offends basic standards of justice in the United States."). *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56 (2d Cir. 2022), said this explicitly: "*Pemex* teaches that a district court should enforce an award that was set aside in the primary jurisdiction … ***only if the judgment setting aside the award can be properly characterized as 'repugnant*** to fundamental notions of what is decent and just' in the United States, in which case reliance on the judgment would be contrary to U.S. public policy." *Id.* at 73 (emphasis added; quoting *Pemex*, 832 F.3d at 106).

Ultimately, this Court arrives at a two-part test for denying comity to an annulment order—"(1) whether the annulment is repugnant to U.S. public policy or (2) whether giving effect to the annulment would undermine U.S. public policy." Op. 40. Judge Rossman has explained, however, why that is anomalous. "To the extent the foreign judgment is repugnant as against United States public policy, therefore, it obviously would be repugnant to enforce it here," but "*Pemex* and *Thai-Lao* did *not* do what the district court and [panel opinion] do here: find the foreign judgment itself was not violative of this country's public policy *but still refuse to enforce it*." Dissent 29, 31 (emphasis in original).

Nor is the resulting circuit split confined to niceties of doctrinal formulation. The result here differs what the D.C. and Second Circuit have reached and would

reach on these facts.  In crediting foreign annulment decisions, those circuits have each stressed that "[t]he annulment of an arbitral award in the primary jurisdiction should [] be given significant weight," *Thai-Lao*, 864 F.3d at 186, and that the public-policy exception is narrowly limited, "infrequently met," and applies "[o]nly in clear-cut cases." *TermoRio*, 487 F.3d at 938 (quotation marks and citations omitted).  Only two cases have ever held this test satisfied, and only where it was necessary to protect a U.S. party (or its subsidiary) from a foreign country's judgment favoring its own government in a blatantly improper manner.  *See Pemex*, 832 F.3d at 108-11; *In re Chromalloy Aeroservices*, 939 F. Supp. 907, 908 (D.D.C. 1996); *see also* Dissent 50 n.25.

The split in question carries profound import.  It spells the difference between a foreign judgment being respected unless clear impropriety is found to infect the foreign judicial process, versus a foreign judgment being disregarded as a U.S. district court may see fit.  *See* Dissent 33-34.  "This is an extraordinary grant of discretionary power to district courts, unsupported by the Convention—which sought to circumscribe such open-ended discretion—or cases interpreting it." Dissent 25-26.

**B.    This Case Presents A Strong Vehicle For Reviewing The Deference Owed To Foreign Court Decisions Vacating Foreign Arbitration Awards**

There is a substantial possibility that the Supreme Court will find that this case presents a strong vehicle for reviewing this issue because the legal question is starkly and cleanly presented.  As Judge Rossman and the panel opinion both acknowledge, "discretion and deference cannot insulate legal errors."  Dissent 7; *see* Op. 19.  And here, the district court made a plain legal error: it "mistakenly declined to extend comity" to an order of Bolivia's highest court "after concluding the order was not 'repugnant.'"  Dissent 6.

Should the Supreme Court reverse the district court's denial of comity to the Bolivian annulment order, this would compel, at minimum, vacatur of the court's opinion and a remand.  A foreign judgment entitled to comity must "be accorded the same degree of recognition to which sister State judgments are entitled."  *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1049 (10th Cir. 2021) (quotation marks omitted).  And a district court would have little to no discretion to disregard the decision of a state supreme court—and rather to enforce a vacated state court judgment—based on the sort of public policy considerations the district court relied on.  *See, e.g.*, *California Med. Ass'n v. Shalala*, 207 F.3d 575, 578 (9th Cir. 2000) (reversing denial of Rule 60(b)(5) motion that was made "on equitable grounds").

Indeed, this case presents "circumstances[] identical to those where [the Second Circuit in] *Thai-Lao* upheld Rule 60(b)(5) vacatur" of a judgment enforcing an arbitral award after the award was annulled. Dissent 14. "*Thai-Lao* [] articulated [a] general rule: a Rule 60(b)(5) motion should be granted where a foreign arbitral award has been set aside." Dissent 12. And a "movant invoking Rule 60(b)(5) under the New York Convention does not face [a] high barrier." *Id.* This Court's opinion diverges from both principles, and thus presents a clean circuit split as to the standard for enforcing annulled foreign arbitral awards, even in a Rule 60(b)(5) procedural posture. Notably, the primary public policy grounds that the district court relied on—GCC's purportedly delaying too long before seeking relief in Bolivia, Op. 61-63—were rejected by the Second Circuit as a valid reason to deny Rule 60(b) relief. *See Thai-Lao*, 864 F.3d at 187 (dismissing objection "to Laos's delay in filing the action to set aside the Award" after U.S. enforcement proceedings began as "an unavailing attempt by Petitioners to challenge the merits of the Malaysian set-aside judgment").

There is a substantial possibility, in short, that the Supreme Court will view this case as squarely conflicting with *Thai-Lao*.

### C.    The Deference Owed To Foreign Court Decisions Vacating Foreign Arbitration Awards Is An Important And Recurring Issue

There is also a substantial possibility that the Supreme Court will grant review because the standard for denying recognition to a foreign annulment order strikes at

10

the heart of the New York Convention's regime.  As the Second Circuit has stated, "[e]nforcement of annulled awards ... would thwart the purpose of the Convention by 'seriously undermin[ing] finality and regularly produc[ing] conflicting judgments,'" which in turn "would encourage global forum shopping, as the losing party would 'pursue its adversary with enforcement actions from country to country until a court is found, if any, which grants the enforcement.'"  Dissent 41-42 (quoting *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 197 n.2 (2d Cir. 1999)).  Additionally, "the most basic foundation of private arbitration" is "that the parties are autonomous and may choose the seat and laws of their arbitral proceedings."  Dissent 54.  That choice is "undermine[d]," *id.*, when a secondary jurisdiction, in effect, "pronounce[s] the decision of" a primary jurisdiction court "wrong," as the district court has done.  *TermoRio*, 487 F.3d at 939.  Finally, this issue affects U.S. relations with other countries, virtually all of which (like Mexico did in this case) would choose to respect a primary jurisdiction's annulment order, notwithstanding U.S. judgments to the contrary.  *See* Dissent 19-21 (surveying foreign authorities).

Furthermore, the circumstances in which a court should enforce an annulled foreign arbitral award implicate a recurring issue, and an increasingly frequent one. This case marks the seventh occasion where a federal court of appeals has considered when "a U.S. court may confirm an arbitral award that a primary jurisdiction has

11

annulled." Op. 23; *see* Op. 23-29.  All of those decisions were decided within the last 25 years, and five were decided within the last ten years.  It is important to resolve the proper legal standard that courts should apply on these cases, especially in a Rule 60(b)(5) posture.  The New York Convention, after all, grants district courts "discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered."  *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1298 (10th Cir. 2020) (quotation marks omitted).  This discretion all but guarantees that many district courts in the future will be forced to weigh comity against public policy concerns.  The Supreme Court may well opt to decide the bounds of trial courts' discretion to race to judgment, notwithstanding parallel primary jurisdiction proceedings, and then find that the finality interests of its own judgment outweighs comity obligations to the primary jurisdiction's highest court.

## II.    GOOD CAUSE FOR A STAY EXISTS BECAUSE A STAY WILL AVOID POTENTIALLY NEEDLESS ENFORCEMENT WITHOUT CAUSING ANY HARM TO CIMSA

In addition to the substantial possibility that the Supreme Court will grant GCC's forthcoming certiorari petition, there is good cause for the Court to stay issuance of the mandate.

*First*, a stay will ensure that the district court and the parties do not needlessly expend resources on enforcement disputes that implicate international comity and

could be rendered moot by the Supreme Court.  The district court stayed pending appeal the enforcement of CIMSA's motion to force GCC to turn over substantial assets in Mexico to the district court in order to satisfy the judgment.  Compliance with this turnover order will, at minimum, violate "a Mexican court decision forbidding GCC from complying with any asset turnover requests globally, based on the comity that court afforded to" the Bolivian annulment order.  Dissent 54 n.26.  In any case, if GCC were somehow ordered to pay the full judgment now (contrary to the terms of the bond), GCC would be forced to engage in further proceedings for return of any payment if this Court's judgment were vacated.  There is no guarantee that CIMSA, a Bolivian company with minimal (if any) U.S. ties, would forfeit such funds or post bond if the district court order were vacated following Supreme Court review.

*Second*, there would be no harm to CIMSA from a stay of the mandate because GCC has posted a full bond for $50 million, more than enough to secure CIMSA's $36 million (plus interest) judgment.  *See* Addendum at 1.  CIMSA is thus guaranteed to receive full payment if the Supreme Court were to deny review and bring this appeal to a close.  A stay would, at most, delay payment by only a few months, while fully securing any post-judgment interest that might accrue (thus accounting for the time-value of money).

Indeed, in a prior appeal before this Court, CIMSA acknowledged that "GCC could obtain a stay of execution" pending Supreme Court review "merely by posting a supersedeas bond." CIMSA Opp. to Mot. to Stay Issuance of Mandate at 1, No. 19-1151 (10th Cir. Sept. 21, 2020). That is precisely what GCC has done, confirming a stay is proper. Moreover, the bond provides that CIMSA "shall not collect on the obligation during the pendency of the appeal of the Order denying [GCC's] Motion to Vacate the judgment," Addendum at 1, and any stay predicated upon the posting of a bond "remains in effect for the time specified in the bond." Fed. R. Civ. P. 62(b). Under the bond's plain terms, enforcement would be premature until GCC's full appellate options, including potential Supreme Court review, have expired.

In short, there is no harm to CIMSA from a delay of a few months in the issuance of this Court's mandate—and certainly not enough to offset the significant harm from restarting district court proceedings that will require substantial resources of the parties and the Court, where (1) there is a significant possibility that all of these proceedings will become moot based on Supreme Court review, and if not, (2) CIMSA is fully secured by a supersedeas bond.

14

## III.   IN THE ALTERNATIVE, THIS COURT SHOULD RECALL THE MANDATE IF THE MANDATE ISSUES BEFORE THIS COURT DECIDES THIS MOTION

This Court has "inherent power to recall [its] mandate." *Calderon v. Thompson*, 523 U.S. 538, 549 (1998). A motion to recall a mandate is the appellate "equivalent of [a] Rule 60(b) motion[]" filed in a district court. *N. Cal. Power Agency v. N.R.C.*, 393 F.3d 223, 225 (D.C. Cir. 2004); *see Burris v. Parke*, 130 F.3d 782, 783-84 (7th Cir. 1997) (similar). If this Court issues the mandate before it decides this motion, as it is presently scheduled to do, recalling the mandate for the reasons specified above would parallel a circumstance in which relief from judgment is authorized in the district court: when the judgment arises from "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Under Fed. R. App. P. 41(b), the mandate automatically issues "7 days after entry of an order denying a timely petition for panel rehearing." Accordingly, should the mandate issue and this Court find that there would have been good cause to stay the mandate had the mandate not already issued, GCC respectfully requests that this Court recall the mandate pursuant to its inherent powers.

## CONCLUSION

The Court should stay issuance of the mandate pending the filing and disposition of GCC's petition for a writ of certiorari and, if the petition is granted, pending the Supreme Court's final disposition. In the alternative, if the mandate

issues before this Court decides this motion, GCC respectfully requests that this Court recall the mandate for the reasons specified in this motion.

Dated:  February 23, 2023                    Respectfully submitted,

                                             /s/ David M. Cooper
Juan P. Morillo                              David M. Cooper
Derek L. Shaffer                             QUINN EMANUEL URQUHART
QUINN EMANUEL URQUHART                           & SULLIVAN, LLP
& SULLIVAN, LLP                              51 Madison Avenue, 22nd Floor
1300 I Street, NW, Suite 900                 New York, NY 10010
Washington, DC 20005                         (212) 849-7000
(202) 538-8000                               davidcooper@quinnemanuel.com
juanmorillo@quinnemanuel.com

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH RULES 32 AND 35</u>

This brief complies with the type-volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure ("FRAP") because this brief contains 3,631 words, excluding the parts of the brief exempt by FRAP 32(f).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

<u>/s/ David M. Cooper</u>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 25.5</u>

Pursuant to Tenth Circuit Rule 25.5, the undersigned counsel certifies that there are no required privacy redactions.


Dated:  February 23, 2023          <u>/s/ David M. Cooper</u>
                                    David M. Cooper

18

## CERTIFICATE REGARDING PAPER COPIES

Pursuant to Tenth Circuit Rule 27.2, the undersigned counsel certifies that there are no paper copies required for this petition.


Dated:  February 23, 2023                    /s/ David M. Cooper
                                             David M. Cooper

## CERTIFICATE REGARDING VIRUS SCANNING

The undersigned counsel certifies that the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.


Dated:  February 23, 2023                    /s/ David M. Cooper
                                             David M. Cooper

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 23, 2023, I served the foregoing petition on counsel for all parties via CM/ECF.


Dated:  February 23, 2023                    */s/* David M. Cooper
                                            David M. Cooper
                                            QUINN EMANUEL URQUHART
                                              & SULLIVAN, LLP
                                            51 Madison Avenue, 22nd Floor
                                            New York, New York 10010
                                            (212) 849-7000

# **ADDENDUM**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.   1:15-cv-02120-JLK                                        BondNo.107382866

**Compania de Inversiones Mercantiles S. A.,**

                                                        Petitioner - Appellee,

v.

**Grupo Cementos de Chihuahua S. A. B. de C. V. and GCC Latinoamerica, S. A. de C. V.,**

                                                        Respondents  -Appellants.

---

## APPEAL BOND

---

We, the appellants, **Grupo Cementos de Chihuahua S. A. B. de C. V. and GCC Latinoamerica, S. A. de C. V.,** as Principals, and **Travelers Casualty and Surety Company of America,** as Surety, are held and firmly bound to the appellee, Compania de Inversiones Mercantiles S. A. in the penal sum of Fifty Million Dollars ($50,000,000.00), to be paid to appellee (its heirs, executors, administrators, or assigns or its successors or assign), for which payment well and truly to be made we bind ourselves, our heirs, executors, administrators, or assigns, jointly and severally, by this instnnnent

Whereas, on **March 26, 2019,** in an action pending in the above court, between the petitioner, **Compania de Inversiones Mercantiles S. A.,** and the respondents, **Grupo Cementos de Chihuahua S. A. B. de C. V. and GCC Latinoamerica, S. A. de C. V.,** judgment was rendered against the respondents in the amount of Thirty-six million one hundred thirty-nine thousand two hundred and twenty-three dollars Dollars ($36, 139,223); and

Whereas, on **April 30, 2021,** the above court entered an Order denying Principals' Motion to Vacate the judgment, the Principals, having filed a Notice of Appeal from such Order to the U.S. Court of Appeals for the Tenth Circuit and having applied for and obtained an order of the District Court staying enforcement of such judgment during the pendency of that appeal.

Now, therefore, the condition of this obligation is that if the appellants shall prosecute the appeal of the Order denying Principals' Motion to Vacate the judgment to effect or if the appellants shall satisfy in full such judgment as modified together with such costs, interests, and damages as the Court of Appeals may adjudge and award, this obligation shall be void; otherwise it shall remain in full service and effect. The appellee, Compania de Inversiones Mercantiles S. A., shall not collect on the obligation during the pendency of the appeal of the Order denying Principals' Motion to Vacate the judgment. It is provided that the surety shall not be liable in the aggregate for more than the penal sum set forth above.

Pursuant to Rule 8(b) of the Federal Rules of Appellate Procedure, **Travelers Casualty and Surety Company of America,** as the surety, hereby submits themselves to the jurisdiction of the District Court.

Dated this ___12th___ day __of___ ___May___ 20 ___2022___

**Grupo Cementos de Chihuahua S. A. B. de C. V.**
**and GCC Latinoamerica, S. A. de C. V**.

Appellant / Principal

BY: _____

ENRIQUE ESCALANTE
ATTORNEY-IN-FACT

**Travelers Casualty and Surety**
**Company of America**

Surety

BY: _____

Vanessa Dominguez, Attorney-in-Fact

Approved this 16th day of May, 2022

_____
John L. Kane
Senior United States District Judge

| ***TRAVELERS⌐*** | Travelers Casualty and Surety Company of America<br>Travelers Casualty and Surety Company<br>St. Paul Fire and Marine Insurance Company |
|---|---|

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:** That Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company are corporations duly organized under the laws of the State of Connecticut (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint **Vanessa Dominguez** of **HOUSTON**, **Texas**, their true and lawful Attorney-in-Fact to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed, and their corporate seals to be hereto affixed, this 17th day of January, **2019.**

  

State of Connecticut

City of Hartford ss.

By: _____

Robert L. Raney, Senior Vice President

On this the 17th day of **January, 2019,** before me personally appeared **Robert** L. **Raney,** who acknowledged himself to be the Senior Vice President of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of said Companies by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

My Commission expires the 30th day of June , **2021**

_____

Anna P. Nowlk, Notary Public

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President. The Treasurer, any Assistant Treasurer , the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with1 the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

FURTHER RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

FURTHER RESOLVED. that any bond. recognizance. contract of indemnity. or writing obligatory in the nature of a bond. recognizance. or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary: or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President. any Senior Vice President. any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

1, **Kevin E. Hughes,** the undersigned, Assistant Secretary of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which remains in full force and effect.

Dated this **12th** day of **May** , **2022**

  

_____

Kevin E. Hughes, Assistant Secretary

**To verify the authenticity of this Power of Attorney, please call us at 1-800-421-3880.**
**Please refer to the above-named Attorney-in-Fact and the details of the bond to which this Power of Attorney is attached.**